1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SOUTHERN   WINE   &   SPIRITS   OF
AMERICA, INC.,

                              Plaintiff,

        v.

DANIELLE PRICE, et al.,

                              Defendants.

Case No. 2:14-cv-00388-JCM-PAL

ORDER

(Mot Enforce Setlmt Agmt – Dkt. #41)

7
8
9
10
11

12    Before the court is a Motion to Enforce Settlement Agreement (Dkt. #41) filed by

13  Defendants Danielle Price, Michael Price, and Barrique International, LLC ("Price Entities")

14  filed November 20, 2014.  The court has considered the Motion, Plaintiff's Opposition (Dkt.

15  #49), Defendants' Reply (Dkt. #53) and Plaintiff's Errata (Dkt. #66) as well as the arguments of

16  counsel at a hearing conducted February 10, 2015.  Leif Reid and Kristen Martini were present

17  on behalf of Plaintiff.  Paul Hejmanowski was present on behalf of Defendants.

18                                    **BACKGROUND**

19    The Complaint in this case was filed in state court and removed (Dkt. #1) March 14,

20  2014.  Plaintiff Southern Wine & Spirits of America, Inc. ("Southern Wine") alleges that it is the

21  exclusive wholesaler of various wines and liquors within the State of Nevada and that while

22  Defendant Danielle Price was employed with Wynn Resorts, the Defendants unlawfully supplied

23  wines and liquors to Imperial Wine Wholesalers and caused Wynn to unlawfully purchase

24  several brands of wine and liquors from Imperial for which Southern Wine had been granted

25  exclusive rights of distribution and importation in the State of Nevada.  The complaint asserts

26  claims for: (1) breach of Plaintiff's statutory rights under Chapter 369 of Nevada Revised

27  Statutes; (2) intentional interference with contract or prospective economic advantage; (3) unfair

28  competition; (4) conspiracy/concert of action; (5) declaratory relief and injunction.  The case was

removed on diversity jurisdiction grounds and the removal petition indicates Plaintiff made a $250,000 pre-complaint demand on the Defendants.

An initial Discovery Plan and Scheduling Order (Dkt. #19) was entered which established an October 10, 2014, discovery cutoff and related deadlines consistent with LR 26-1(e). On June 30, 2014, the parties submitted a Stipulation and Proposed Order Requesting a 60-day Stay of Discovery Pending Settlement (Dkt. #35). In the stipulation, the parties advised the court that on June 24, 2014, they were able to settle this matter "subject to documentation of the terms of the settlement." The parties requested, and received, a 60-day stay to enable them to memorialize their written settlement agreement. The Order (Dkt. #36) approving the stipulation set the matter for a status conference on September 9, 2014, at 10:00 a.m., if the matter had not yet been dismissed.

At the September 9, 2014, status conference counsel for the parties advised the court that they were at an impasse and their settlement negotiations had halted. *See* Minutes of Proceedings (Dkt. #40). Plaintiff's counsel requested that the court reinstate discovery. The court heard representations of counsel regarding their individual discovery needs. Plaintiff indicated it intended to retain a damages expert and expected to take eight to ten depositions. Defendants indicated they would propound written discovery and take an additional eight to ten depositions. Defense counsel requested a settlement conference. Plaintiff's counsel did not oppose setting a settlement conference, but wished to proceed with discovery. Plaintiff's counsel requested 120 days to complete discovery, and defense counsel asked for 180 days because document productions were expected to be voluminous and would need to be reviewed before depositions were taken. Both sides requested a settlement conference after the close of discovery. The court entered a Discovery Plan and Scheduling Order (Dkt. #39) giving the parties 150 days to complete discovery measured from the date of the hearing. The court also entered a separate Order (Dkt. #38) scheduling a settlement conference for February 11, 2015, after the close of discovery.

The parties proceeded with discovery, and this motion to enforce settlement agreement was filed approximately two-and-a-half months after the status conference. The parties

stipulated to an extension of time for briefing on this motion, and stipulated to a continuance of the motion hearing which the court initially set for December 30, 2014.  In the interim, the parties also requested and received an extension of the deadline to disclose experts and rebuttal experts citing the holiday season and "some slight unforeseen and unavoidable delay incurred in obtaining and compiling data requested for expert analysis."  *See* Stipulation and Order (Dkt. #48).  The stipulation also advised the court that five depositions were currently noticed to occur between December 8 and 12, 2014.

In the current motion, Defendants seek an order to enforce a settlement agreement the parties discussed in a series of six written exchanges between May 15, 2014, and June 24, 2014. Defendants argue that the parties reached an agreement on all essential terms, and that the court should therefore enforce the parties' agreement "as evidenced by multiple emails and letters from counsel detailing the terms and acceptance of the settlement."  Specifically, Defendants seek an order embodying the following terms of the settlement:

1. Payment of $25,000 to Plaintiff.

2. From May 1, 2014, through May 1, 2018, the Prices shall not knowingly sell any wines to any wholesaler or retailer in the State of Nevada for delivery, consumption or resale, within the State of Nevada.  This two-year restriction shall not apply to: (1) online sales of wine into Nevada by the Prices to individual purchasers who are buying for their own domestic consumption within the contemplation of NRS 369.490; and (2) any Price entities that are acting as suppliers of their own products.

3. From May 1, 2018, through May 1, 2020, if the Prices choose to sell into Nevada, for the benefit of any retailer, rare or vintage wines: (1) which were originally produced by a supplier with which SW&S's Nevada operation currently has an exclusive relationship; and (2) that supplier no longer provides those rare or vintages wines at issue to wholesalers, including SW&S; then the Prices may provide those rare or vintage wines but only through SW&S.  Providing such rare or vintage wines through SW&S shall be subject to SW&S's customary and reasonable charges for such

services provided that SW&S will process such transactions, and service such transactions, in a customary and efficient manner.

   a. For any rare or vintage wines for which SW&S's Nevada operation has a legally binding exclusive relationship that the Prices choose to sell to a wholesaler in Nevada, for the benefit of any retailer, they must provide SW&S proof of authenticity of such product but only to the extent such a proof of authenticity requirement is standard and customary in all such similar types of SW&S transactions with other parties.

4.    Mutual releases, non-disparagement, and confidentiality provisions.

5.    Each party to bear its own costs and attorneys' fees.

The motion is supported by the Declaration of counsel, Paul R. Hejmanowski, and Exhibits A1 – A8 which are the six exchanges among counsel memorializing their settlement discussions. Exhibits A9 and A10 are email exchanges between counsel on July 21, 2014, inquiring about the progress of drafting the settlement agreement, and a response from counsel for Plaintiff, Leif Reid, that he would have a draft to Mr. Hejmanowski the following day. The motion to enforce did not attach any draft proposed settlement agreements or further exchanges among the parties through the time of the court's September 9, 2014, status conference.

Plaintiff opposes the motion asserting there is no settlement agreement to be enforced because the parties could not agree to the material terms of the settlement. Additionally, Plaintiff claims that it learned during discovery that documents have been destroyed and infringing transactions concealed by false product coding on purchase orders. As such, even if an enforceable agreement had been entered into, which Plaintiff denies, a settlement would be voidable by the Plaintiff under fraudulent inducement and fraudulent concealment principles. Plaintiff argues that the parties' email exchanges, which are attached to the motion to enforce, establish that both Plaintiff and Defendants intended the settlement to only be enforceable upon entering into a written settlement agreement signed by the parties. No written settlement agreement was executed by the parties and therefore any settlement purportedly reached through preliminary term discussions is an unenforceable and non-binding agreement to agree. The

4

parties agreed and represented to the court that their settlement would only be binding upon the execution of a written settlement agreement. The Plaintiff therefore asks that the court deny the motion.

Defendants reply that the parties have agreed upon the scope, terms, and verbiage of the release, and have therefore agreed to the material terms of the settlement. Defendants concede that a release is a material term of a settlement, but citing *May v. Anderson*, 121 Nev. 68, 670, 119 P.3d 1254, 1257 (2005), argue that a party's refusal to execute a release document after agreeing to its essential terms does not render a settlement agreement invalid. The Plaintiff's opposition does not state any disagreement between the parties regarding the scope of the release. The reply attaches a September 4, 2014, email from Leif Reid to Paul Hejmanowski which refers to an updated reline draft of the settlement agreement. The reply attaches what is reported to be a redlined draft of the settlement agreement attached to Mr. Reid's email as Exhibit A2 to the reply.

Plaintiff filed an Errata (Dkt. #67) the day before the hearing "to supplement and correct erroneously attached pages to Exhibits 3 through 5 of Plaintiff's opposition and to add an exhibit to Plaintiff's opposition."

## **DISCUSSION**

The Ninth Circuit reviews a district court's decision to grant or deny a motion to enforce settlement for abuse of discretion. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). The Court of Appeals will reverse a decision on a motion to enforce if it is based "on an error of law or clearly erroneous findings of fact." *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990), cert. denied, 501 U.S. 1250 (1991).

In this case, the parties agree that federal courts apply state law contract principles in deciding a motion to enforce. *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014). The Nevada Supreme Court has held that because a settlement agreement is a contract, its construction and enforcement is governed by principles of contract law. *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). For a contract to be enforceable, basic contract principles require: and offer and acceptance, meeting of the minds, and consideration. *Id*. Preliminary negotiations

do not constitute a binding contract unless the parties have agreed to all material terms. *Id*. A contract is not enforceable when material terms are lacking or are insufficiently certain and definite. *Id.* However, a contract may be formed when the parties have agreed to the material terms, even though the contract's exact language is not finalized until later. *Id.* A court may not compel compliance of a settlement agreement "when material terms remain uncertain. The court must be able to ascertain what is required of the respective parties." *Id*. The terms of a release are material to any settlement agreement. 121 Nev. at 673-74, 119 P.3d at 1258. The Nevada Supreme Court has found that "release terms are not a mere formality," but "an important reason why a party enters into a settlement agreement." *Id.*

In response to questions by the court counsel for Plaintiff disputed that the parties reached an agreement on all essential terms except for the standard "boilerplate" language needed to memorialize the scope of the release, non-disparagement and confidentiality provisions. In oral argument counsel for Plaintiff asserted that the parties had many disputes about the scope and terms of the settlement agreement outlined in their email exchanges. Specifically, the parties were unable to agree about the terms of the confidentiality agreement; Defendants insisted on inserting language that suggested the Plaintiff's exclusive rights and its brands were "alleged" rights; and Defendants struck the schedule of wines over which Plaintiff had exclusive rights as well as provisions Plaintiff drafted to ensure enforcement of the parties agreement.

Counsel for Defendants argued at the hearing that the parties reached agreement on all essential terms, including the form of release, and that Southern Wine merely changed its mind after entering into a binding agreement. Counsel for Defendants requested that the court enforce the agreement memorialized in the parties' exchanges.

The court finds that the parties' email exchanges and communications are insufficient to create a binding and enforceable settlement agreement as the exchanges do not represent an agreement on all essential terms. The parties agreed on the amount Defendants would pay, and the length of a non-competition agreement, but not its scope. Neither side disputes that they also agreed that each side would bear its own costs and attorney's fees. However, the parties did not

1    agree on the material terms of the mutual release, non-disparagement and confidentiality

2    provisions referred to in Mr. Hejmanowski's initial settlement offer to Southern Wine.

3         The parties submitted a Stipulation (Dkt. #35) requesting a 60-day stay of discovery

4    which represented that on June 24, 2014, the parties "were able to settle this matter subject to

5    documentation of the terms of the settlement."  The court approved the stipulation in an Order

6    (Dkt. #36) entered July 3, 2014, and set this matter for a status conference on September 9, 2014.

7    At the September 9, 2014, status conference, counsel for both sides advised the court that they

8    were at an impasse and that the settlement negotiations had halted.  *See* Minutes of Proceedings

9    (Dkt. #40).  *See* also the Scheduling Order (Dkt. #39) the court entered after the hearing which

10   also memorialized that the parties advised the court that they had still "not agreed to settlement

11   terms."  During oral argument on this motion, counsel for Defendants reminded the court that at

12   the September 9, 2014 status conference, he advised the court of his position that a binding

13   settlement had been reached.  As no motion to enforce had yet been filed, the court advised

14   counsel to file a motion if he felt it appropriate and entered a discovery plan and scheduling

15   order because the parties advised the court that they had reached an impasse on settlement terms.

16   Counsel for Plaintiff acknowledged that counsel for Defendants took the position at the

17   September 9, 2014. status conference that a binding settlement had been reached.

18        The motion to enforce settlement agreement was not filed until November 20, 2014,

19   nearly two-and-a-half months after the status conference, and after the parties advised the court

20   that an impasse had been reached and an amended discovery plan and scheduling order was

21   entered.  Counsel for Defendants advised the court that the motion was not filed earlier because

22   of his case load demands and well-publicized business matters pertaining to his former law firm.

23        The parties apparently exchanged draft agreements sometime after July 21, 2014.  The

24   Defendants did not attach the draft proposed settlement and release agreement which the

25   Defendants were prepared to sign to the motion to enforce.  The redline draft attached to the

26   reply which was attached to Mr. Reid's September 4, 2014, email to Mr. Hejmanowski, is not a

27   complete draft agreement. Mr. Reid's email stated that the attached draft was the agreement his

28

1  client was prepared to sign. The exhibit Defendant attached to the reply is obviously incomplete,

2  has large gaps, and is unintelligible as submitted.

3         Mr. Reid's September 4, 2014, email to Mr. Hejmanowski makes it plain that many of

4  the changes proposed by the Defendants were not acceptable to the Plaintiff and, in Plaintiff's

5  view, inconsistent with prior conversation regarding the draft.  *See* Exhibit A2 to the reply.  The

6  email flatly states that "the confidentiality agreement, as proposed, was deemed as especially

7  problematic with respect to monitoring and enforcing compliance with the agreement."  The

8  email goes on to state that the Plaintiff was not interested in further back and forth on the issues,

9  wanted finality regarding settlement discussions as soon as possible, and that if Defendants were

10 not prepared to sign the attached draft that Plaintiff was prepared to sign, his client had instructed

11 him to restart the litigation.

12        For the reasons stated, the court finds that the parties did not reach a meeting of minds on

13 all essential terms of the conditions of the proposed settlement offers and counter-offers

14 memorialized in the parties' exchanges between May 14, 2014, and June 24, 2014.  Accordingly,

15        **IT IS ORDERED** that Defendants' Motion to Enforce Settlement Agreement (Dkt. #41)

16 is **DENIED**.

17        DATED this 13th day of February, 2015.

18

19                                          _____
20                                          PEGGY A. LEEN
                                            UNITED STATES MAGISTRATE JUDGE
21

22

23

24

25

26

27

28