1  E. LEIF REID, NV BAR NO. 5750
   KRISTEN L. MARTINI, NV BAR NO. 11272
2  LEWIS ROCA ROTHGERBER LLP
   50 West Liberty Street, Suite 410
3  Reno, Nevada  89501
   (775) 823-2900
4  (775) 823-2929 (fax)
   lreid@lrrlaw.com
5  kmartini@lrrlaw.com

6  *Attorneys for Plaintiff*

7              UNITED STATES DISTRICT COURT

8                  DISTRICT OF NEVADA

9  SOUTHERN WINE & SPIRITS OF
   AMERICA INC., a foreign corporation, doing       Case No.  2:14-cv-00388-JCM-PAL
10 business as SOUTHERN WINE & SPIRITS
   OF NEVADA,                                        **PLAINTIFF'S MOTION FOR ORDER**
11                                                   **TO SHOW CAUSE**
                          Plaintiff,
12
           vs.
13
   DANIELLE PRICE, an individual, MICHAEL
14 PRICE, an individual, BARRIQUE
   INTERNATIONAL LLC, a dissolved Nevada
15 limited liability company, and DOES I through
   X, inclusive,
16
                          Defendants.
17

18        Plaintiff Southern Wine & Spirits of America, Inc., doing business as Southern Wine & Spirits

19 of Nevada ("Southern Wine"), by and through its counsel of record, the law firm of Lewis Roca

20 Rothgerber LLP, moves the Court for an Order to Show Cause as to why Defendants Danielle Price,

21 Michael Price, and Barrique International LLC ("Defendants") should not be held in contempt of

   Court for failing to abide by this Court's April 22, 2015, Order (Doc. # 84).  This Motion is made
22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28

                                        -1-                              5890910_1

1 | pursuant to LR 7-2, and is based upon the following Memorandum of Points and Authorities, the

2 | attached Exhibits, and the pleadings and papers on file herein.

3 | DATED this 20th day of May, 2015.

LEWIS ROCA ROTHGERBER LLP

By: /s/ Kristen L. Martini
E. LEIF REID
Nevada Bar No. 5750
KRISTEN L. MARTINI
Nevada Bar No. 11272
50 West Liberty Street, Suite 410
Reno, NV 89501
*Attorneys for Plaintiff*

## MEMORANDUM OF POINTS AND AUTHORITIES

After much protracted and failed settlement discussions (including briefing and argument on Defendants' motion to compel an unenforceable settlement agreement), the parties appeared before this Court on April 2, 2015, for a settlement conference. *See* Doc. ## 38, 84. At the settlement conference, the parties reached an agreement. *See* Doc. # 84. "Both sides agree[d] that a binding and enforceable settlement was reached on terms contained in the attachment to Mr. Reid's September 4, 2014, email to Mr. Hejmanowski with the exception of terms negotiated at the April 2, 2015 settlement conference." *Id.* at 1. All parties represented to the Court that the new terms reached during the settlement conference were those expressly stated by the Court at the conclusion of the settlement conference. *Id.* at 1-2. The parties were then given two weeks to reduce the agreement to a written Settlement and Release Agreement, with the September 4, 2014, draft as the basis of the agreement subject to the few exceptions mentioned above. *Id.*

The parties, however, were unable to agree to the terms reached during the settlement conference, including whether the old, section 3.4—as it existed in the September 4, 2014, draft—would remain in the agreement. *See id.* at 3; *see generally* Doc. # 86. Notably, nothing section 3.4 was changed or even discussed during the settlement conference, although Defendants have subsequently complained that they are unwilling to agree to that term.

5890910_1

LEWIS ROCA
ROTHGERBER

1    An April 16, 2015, telephone conference was held with the Court, and the parties

2    presented argument concerning their disagreements. *See* Doc. # 84. A hearing was conducted

3    on April 21, 2015, and the Court—as the final arbiter of the dispute—resolved the settlement

4    disputes in total. *Id.* at 3-4.

5    In its April 22, 2015, Order, the Court ordered that the parties shall have until May 5,

6    2015, to execute the Settlement and Release Agreement in the form attached as Exhibit A to that

7    Order. *Id.* at 4. This Court further ordered that Defendants' payment obligations must be

8    completed on or before May 19, 2015, and that the parties must file a stipulation for dismissal

9    with prejudice on or before May 19, 2015, as well. *Id.*

10   Due to voluminous nature of the Liquor Wholesale Designation Forms ("LT08s") that

11   were to be attached as an exhibit to the Settlement and Release Agreement (at Defendants'

12   request), the parties stipulated to, and this Court granted, a 10-day extension of time for the

13   execution of the Settlement and Release Agreement. *See* Doc. # 87. The May 19, 2015,

14   deadlines set forth in the Court's April 22, 2015, Order remained in effect. *Id.*

15   On May 11, 2015, counsel for Southern Wine forwarded to counsel for Defendants a

16   draft Stipulation for Dismissal with Prejudice for his review and comment. Ex. 1.

17   The parties have been in communication regarding the LT08s. During one of those

18   communications, on Wednesday, May 13, 2015, Defendants' counsel again raised Defendants'

19   unwillingness to agree to section 3.4 of the Settlement and Release Agreement, contrary to the

20   Court's Order. *See* Ex. 2. At the end of that email, Defendants' counsel stated,

21   > In addition, after the last hearing, the Court adopted a form
   > of settlement agreement that included paragraph 3.4. As written,
22   > 3.4 is inconsistent with the basic settlement terms. The parties
   > negotiated for a five year ban on business in Nevada and thereafter
23   > for a recognition that SWS asserts exclusive rights to various wines
   > and that the Prices would be bound by Nevada law. Paragraph 3.4
24   > is inconsistent with that structure because it, for example, appears
   > to impose perpetual contractual limitations on the Prices that do
25   > not apply to other on-line retail sellers. ***Accordingly, I***
   > ***contemplate signing the agreement with reservation of the right***
26   > ***to file a motion for reconsideration with respect to the paragraph***
27   > ***3.4 issues. Consequently, I need to hold off signing the***
   > ***stipulation for dismissal.***

28

LEWIS ROCA
ROTHGERBER

1   *Id.* (emphasis added).

2       On May 14, 2015, approximately 22 days after entry of this Court's Order (and only two

3   business days before the Court-ordered dismissal date), Defendants' filed their Motion for

4   Reconsideration, re-hashing their challenge to section 3.4 of the Settlement and Release

5   Agreement. *See* Doc. # 88. This Motion will be opposed and Defendants should be sanctioned

6   for further protracting this matter by re-litigating these issues.

7       On May 18, 2015, the parties conducted a telephone conference regarding the

8   completion of a brand list to accompany the LT08s provided to Defendants, the list would be for

9   clarity. *See* Ex. 1. With respect to the stipulation for dismissal, Defendants' counsel agreed to

10  the form of the draft that counsel for Southern Wine had previously sent, but that he was unable

11  to execute the stipulation in light of Defendants' pending Motion for Reconsideration. *Id.*

12  Telling of Defendants' mindset, prior to that telephone conference, counsel for Defendants

13  forwarded to counsel for Southern Wine a "Re-Draft" of the Settlement and Release Agreement

14  that included substantial changes made by Defendant Michael Price. *See id.*; Ex. 3. While

15  Defendants refused to execute the stipulation for dismissal with prejudice, Defendants are

16  attempting to renegotiate the settlement agreement that was reached on April 2, 2015, and

17  Ordered by this Court on April 22, 2015. *See* Ex. 3.

18      Defendants' failure to execute the stipulation to dismiss this action with prejudice in

19  compliance with this Court's April 22, 2015, Order prohibits Southern Wine from complying.

20  Because of Defendants' noncompliance, Southern Wine had no choice but to notify this Court of

21  Southern Wine's inability to file the stipulated dismissal with prejudice.

22      DATED this 20th day of May, 2015.

23                                  LEWIS ROCA ROTHGERBER LLP

24

25                                  By: /s/ Kristen L. Martini
                                        E. LEIF REID
26                                      Nevada Bar No. 5750
                                        KRISTEN L. MARTINI
27                                      Nevada Bar No. 11272
                                        50 West Liberty Street, Suite 410
28                                      Reno, NV 89501
                                        *Attorneys for Plaintiff*

LEWIS ROCA
ROTHGERBER

-4-                                                    5890910_1

1

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I certify that I am an employee of LEWIS ROCA ROTHGERBER LLP, and that on the 20th day of May, 2015, I caused the **PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE** to be served:

    ___     by placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail at Reno, Nevada, postage prepaid, following ordinary business practices, addressed as follows:

           Paul R. Hejmanowski, Esq.
           Hejmanowski & McCrea LLC
           520 South 4th Street, #320
           Las Vegas, Nevada 89101

    _X_     by electronically filing the foregoing with the CM/ECF electronic filing system, which will send a notice of electronic filing to the following:

           Paul R. Hejmanowski, Esq.
           prh@hmlawlv.com

    ___     by placing an original or true copy thereof in a sealed envelope and causing the same to be personally hand-delivered, addressed as follows:

           Paul R. Hejmanowski, Esq.
           Hejmanowski & McCrea LLC
           520 South 4th Street, #320
           Las Vegas, Nevada 89101

                          /s/ Laura J. Heath
                          Employee of Lewis Roca Rothgerber LLP

LEWIS ROCA
ROTHGERBER

5890910_1

# EXHIBIT 1

# EXHIBIT 1

## DECLARATION OF KRISTEN L. MARTINI IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE

I, Kristen L. Martini, declare under penalty of perjury that the following assertions are true and correct to the best of my knowledge:

1.      I am an attorney with the law firm of Lewis Roca Rothgerber LLP and I am licensed to practice law in the State of Nevada.  Our firm represents Southern Wine & Spirits of America, Inc., doing business as Southern Wine & Spirits of Nevada ("Southern Wine"), in litigation against Danielle Price, Michael Price, and Barrique International, LLC.

2.      I make the following declaration based on my personal knowledge and, if called, would testify consistent with this declaration.

3.      On May 11, 2015, I forwarded to Paul Hejmanowski, via email, a draft Stipulation for Dismissal with Prejudice for his review and comment.

4.      Attached to Southern Wine's Motion for Order to Show Cause as Exhibit 2 is a true and accurate copy of an email forwarded to me from Leif Reid on May 13, 2015.  The forwarded email was from Mr. Hejmanowski to Leif Reid, dated May 13, 2013, regarding the Settlement Agreement Exhibit A.

5.      On May 18, 2015, Mr. Reid, Mr. Hejmanowski, Defendant Michael Price and me conducted a telephone conference regarding the completion of a brand list to accompany the LT08s provided to Defendants, which list would be provided for clarity due to the voluminous nature of the LT08s.  With respect to the stipulation for dismissal, Defendants' counsel agreed to the form of the draft that counsel for Southern Wine had previously sent, but that he was unable to execute the stipulation in light of Defendants' pending Motion for Reconsideration.

6.      Prior to the above-referenced telephone conference that occurred on May 18, 2015, counsel for Defendants forwarded to counsel for Southern Wine a "Re-Draft" of the Settlement and Release Agreement that included substantial changes made by Defendant Michael Price.  Attached to Southern Wine's Motion for Order to Show Cause as Exhibit 3 is a

/ / /

/ / /

-1-

5875372_1

true and accurate copy of an email sent from Mr. Hejmanowski to me on May 18, 2015, with Defendant Michael Price's redline to the Settlement and Release Agreement attached thereto.

I make this declaration under penalty of perjury, under the law of the United States, in Reno, Nevada, on May 20, 2015.

        /s/    Kristen L. Martini
        KRISTEN L. MARTINI

LEWIS ROCA
ROTHGERBER

5875372_1

# EXHIBIT 2

# EXHIBIT 2

**Martini, Kristen**

| | |
|---|---|
| **From:** | Reid, Leif |
| **Sent:** | Wednesday, May 13, 2015 10:55 AM |
| **To:** | Martini, Kristen |
| **Subject:** | FW: Settlement Agreement Exhibit A |

---

**From:** Paul Hejmanowski [mailto:prh@hmlawlv.com]
**Sent:** Wednesday, May 13, 2015 10:54 AM
**To:** Reid, Leif
**Subject:** Settlement Agreement Exhibit A

Leif,

We have not been able to review in detail all of the 6,000 entries on the Exhibit A that you provided but did review a small sampling (below) which raised some very real concerns. Specifically,

i.  **"Wine Library – J&P Nevada":** First, someone specifically hand wrote on the LT08 that it's "not exclusive" so why is it included? Second, starting on page 5 of 27 it lists wines like Chateau Latour, D'Yquem, Lafite and others. These are not exclusive to SWS.

ii.  **"Pasternak Wine Imports – See Attached List 2005":** Starting on page 3 of 6 it lists wines such as Chateau Lafite. This wine, for example, is not exclusive to SWS.

iii.  **"Pasternak Wine Imports – Chateau L'Evangile":** I do not believe this wine is exclusive to SWS.

iv.  **"Diageo Chateau & Estates – List 2004":** Starting on page 6 of 33 it lists wines such as Chateau Leoville, Lynch Bages, Pape Clement, Pavie, Pichon, as well as Lafite, Margaux, Haute Brion, Latour, Petrus, Ausone, D'Yquem and La Mission. These are not exclusive to SWS.

v.  **"Frederick Wildman & Sons – 2010 LT08" Folder; "Frederick Wildman & Sons – SEE ATTACHED":** Starting on page 2 of 4, it lists wines such as Chateau Leoville, Latour, Pontet Canet, Ducru Beaucaillou, Lalande and Pichon. These are not exclusive to SWS.

vi.  **"Le Cheval Fou LLC":** This wine is no longer represented by SWS and is not exclusive to SWS.

vii.  **"Allied Domecq Spirits USA":** This wine is listed as a DC'd vendor by SWS.

viii.  **"A to Z Wineworks":** This wine is listed as a DC'd vendor by SWS.

ix.  **"4 Wine Plus More LLC":** This wine is listed as a DC'd vendor by SWS.

x.  **"3 Lady Spirits":** This wine is listed as a DC'd vendor by SWS.

I presume that "DC-d" means discontinued. Based on this sample, it appears that Exhibit A may contain a significant number of wines which are not exclusive to SWS. Obviously, the accuracy of Exhibit A is very important. Would you please have Exhibit A reviewed and pruned to eliminate references to non-exclusive wines and/or wines that are no longer represented by SWS. We will, of course, have the same concerns about future supplements to Exhibit A. We need a mechanism to ensure accuracy.

In addition, after the last hearing, the Court adopted a form of settlement agreement that included paragraph 3.4. As written, 3.4 is inconsistent with the basic settlement terms. The parties negotiated for a five year ban on business in Nevada and thereafter for a recognition that SWS asserts exclusive rights to various

wines and that the Prices would be bound by Nevada law.  Paragraph 3.4 is inconsistent with that structure because it, for example, appears to impose perpetual contractual limitations on the Prices that do not apply to other on-line retail sellers.  Accordingly, I contemplate signing the agreement with reservation of the right to file a motion for reconsideration with respect to the paragraph 3.4 issues.  Consequently, I need to hold off signing the stipulation for dismissal.

Paul

# EXHIBIT 3

# EXHIBIT 3

4748319_1

**Martini, Kristen**

| | |
|---|---|
| **From:** | Paul Hejmanowski <prh@hmlawlv.com> |
| **Sent:** | Monday, May 18, 2015 3:21 PM |
| **To:** | Reid, Leif; Martini, Kristen |
| **Subject:** | FW: Settlement agreement |
| **Attachments:** | Re-Draft SETTLEMENT AND RELEASE  AGREEMENT(WineList)_05.17_15.docx |

This will confirm that we received the call-in information and will be speaking to you at 4 pm.
In the meantime, Mike thought it would be helpful to forward you his thoughts about trying to clarify some of the points in the agreement (without trying to change the substance).  He will be pleased to elaborate on his reasoning during the conference call if that will be helpful.

Paul

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is effective as of this _____ day of May, 2015 ("Effective Date"), by and between SOUTHERN WINE & SPIRITS OF AMERICA, INC., d/b/a SOUTHERN WINE & SPIRITS OF NEVADA ("SW&S"), and DANIELLE PRICE, an individual, and MICHAEL PRICE, an individual (collectively, the "Prices").  This Agreement shall also cover BARRIQUE INTERNATIONAL LLC ("Barrique"), a dissolved Nevada limited liability company (Barrique and the Prices collectively, the "Price Entities").   Each of the foregoing may be referred to as a "Party", and collectively referred to hereafter as "the Parties."

The Parties now wish to fully and to finally avoid further costs of litigation and to compromise and settle any and all claims, controversies and disputes between them based on, derived from, related to, or that could have been alleged in the "Action" (as defined below) and the damages allegedly sustained by the Parties, including without limitation, all past and present claims asserted or unasserted, known or unknown, based on, derived from, or related to any of the allegations within the Action and agree as follows:

## RECITALS

WHEREAS, on or about November 15, 2013, SW&S, by and through its counsel of record, Lewis Roca Rothgerber LLP, filed a formal Complaint alleging causes of action for breach of statutory rights, intentional interference with contract or prospective economic advantage, unfair competition, and accounting/declaratory relief/injunction.  Said Complaint was filed in the Eighth Judicial District Court, County of Clark, State of Nevada, Case Number A-13-691758-C.  On or about March 14, 2014, Defendants Danielle Price and Michael Price filed an Answer disputing any and all allegations of SW&S, and a Petition for Removal to the United States District Court, District of Nevada.  On May 21, 2014, the Prices filed a First Amended Answer, and on April 18, 2014, Barrique filed an Answer, both disputing any and all allegations of SW&S with the United States District Court, District of Nevada.  The case is currently pending in the United States District Court, District of Nevada, as Case No. 2:14-cv-00388-JCM-PAL ("the Action").

WHEREAS the Price Entities agree that SW&S, d/b/a Southern Wine and Spirits of Nevada, and as Comstock Wine & Spirits and J & P Wholesale, have whatever exclusive rights may be granted to it, pursuant to contract and Nevada law, including Nevada Revised Statutes Chapters 369 and 597, over certain brands of wines listed in Liquor Wholesaler Designation and Acceptance Forms ("LT08s") that SW&S has filed with the Nevada Department of Taxation, including, but not limited to, the brands listed in the attached as Exhibit "A";

WHEREAS SW&S represents and warrants the winesbrands listed in theLT08s attached as attached Exhibit "A" and any revised Supplemental Lists (defined below) and covered by this Agreement shall be for only those brands of wines for which SW&S asserts exclusive distribution rights;

WHEREAS SW&S has provided and the Price Entities have received the LT08s for the winesbrands listed in the attached Exhibit "A";

Comment [MP1]: This is intended to address the fact that some SW&S LT08's are for wines that SW&S does not assert exclusivity as we identified Friday during our call (i.e., the various LT08's I flagged on disk)

Comment [MP2]: This creates unnecessary ambiguity which does neither side any good. I'd ask that in the interest of reasonableness, all wines are listed in Exhibit 'A' that SWS asserts exclusivity and we remove  phrase "but not limited to".

Comment [MP3]: I realize this is implied, and therefore would hope that SW&S is not against providing it - particularly based on the inaccuracy of those various erroneous LT08 docs in the disk provided to us.

Comment [MP4]: This is a tweak to address the real world application. As we saw with Chateau Lafite, "brands" is too broad since SW&S doesn't exclusively represent all of Chateau Lafite's wines. This should really say "wines" to be more accurate.

Error! Unknown document property name.5877752_1

WHEREAS SW&S may, from time to time, designate additional or different wines and liquors as to which SW&S asserts exclusive distribution rights and has LT08s, and such LT08s are filed with the Nevada Department of Taxation, and which will be covered by this Agreement by both supplementing the list attached as Exhibit "A" and providing the accompanying LT08's with the additional LT08s (the "Supplemental Lists") by written notice to the Prices, sent certified mail to Danielle Price and Michael Price at P.O. Box 2216, Sausalito, California 94966, or such other address as the Prices may designate from time to time.  Any such Supplemental Lists shall identify any wines for which SW&S no longer has an exclusive right of importation and distribution.  In the event the Prices object to anything in the list on Exhibit "A" or any Supplemental Lists, the Prices may strike and initial any such objected items and shall return the revised Exhibit "A" or Supplemental List to SWS at: _____. Las Vegas, NV _____.

**Comment [MP5]:** This is a tweak that came up as a result of the LT08's sent to us on the disk and our call Friday.  We all agree that SWS has LT08's for wines that it does not in fact assert exclusivity so this sentence isn't accurrate (i.e., Lafite, Margaux, etc.).  Adding this provides a more accurate description.

**Comment [MP6]:** In the interest of ensuring communication, I want to be sure we receive what is sent to us and SWS is aware if we haven't gotten it.

**Comment [MP7]:** I'm not sure if there's a better way to address this but this is my attempt to give us some recourse in the event we see a wine we don't agree with on the list.

## AGREEMENT

In consideration of the mutual promises and undertakings set forth in this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

1.      **Adoption of Recitals.**  The recitals set forth above are hereby adopted and made a part of this Agreement and are incorporated herein by this reference.

2.      **Execution of Documents.**  The Parties agree to execute any documents and pleadings necessary to effectuate and carry out the purpose and intent of this Agreement, including without limitation those necessary to dismiss the Action with prejudice as specified in Section 3.6 below, or to evidence anything contained herein.

3.      **Settlement Terms.**

3.1      In full, complete, and final settlement, the Prices, jointly or severally, shall pay, through its attorney of record, monetary consideration as follows:

A.      the sum of TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($25,000.00), paid to SW&S in care of the law firm of Lewis Roca Rothgerber LLP, 50 W. Liberty Street, Suite 410, Reno, Nevada 89501, within fourteen (14) days of the execution of this Agreement;

B.      the sum of TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($25,000.00), paid to the organization of Keep Memory Alive, 888 W. Bonneville Avenue, Las Vegas, Nevada 89106 (check payable to Keep Memory Alive), within fourteen (14) days of the execution of this Agreement;

C.      the sum of TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($25,000.00), paid to SW&S in care of the law firm of Lewis Roca Rothgerber LLP, 50 W. Liberty Street, Suite 410, Reno, Nevada 89501, no later than the one-year anniversary of the Effective Date of this Agreement; and

D.      the sum of TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($25,000.00), paid to the organization of Keep Memory Alive, 888 W. Bonneville

Error! Unknown document property name.5877752_1

Avenue, Las Vegas, Nevada 89106 (check payable to Keep Memory Alive), no later than the one-year anniversary of the Effective Date of this Agreement.

3.2     For a duration of five (5) years from the Effective Date of this Agreement, the Prices, and any of them, and any business entity that they own or control, shall not engage in business in the State of Nevada as a wholesaler, importer, or supplier of wine or other liquor, as those terms are defined in NRS Chapter 369 and Chapter 597, in any method or manner whatsoever, including through online sales or otherwise.

3.3     If, in contravention of Section 3.2, the Prices, or any of them, or any business entity that they own or control, engage in business in the State of Nevada as a wholesaler, importer, or supplier, as those terms are defined in NRS Chapter 369 and Chapter 597, the Prices or any of them shall be liable to SW&S as liquidated damages, and not as a penalty, in the amount of $1,000 for each case of wine or liquor supplied, imported, or sold in the State of Nevada.

3.4     After the initial five (5) years, the~~The~~ Price's ~~Entities~~, or any business entity they own or control, shall not hereafter import into the State of Nevada and shall not distribute, sell, and/or offer for sale within the State of Nevada, and/or cause to be "cleared" into the State of Nevada~~,~~ whether as an ~~supplier,~~ importer, wholesaler or retailer, as those terms are defined in NRS Chapter 369 and Chapter 597, or through any online business, any wines contained in the ~~LT08s~~list attached as Exhibit "A" or in the Supplemental Lists to be provided by SW&S pursuant to the Recitals above unless they are in compliance with NRS Chapter 369 and Chapter 597.~~or any other applicable statutes and regulations  The Price Entities, or any of them, or any business entity they own or control, shall not distribute, sell, and/or offer for sale within the State of Nevada, and/or cause to be "cleared" into the State of Nevada through any licensed Nevada wholesaler any wines or liquors listed in the LT08 attached as Exhibit "A," or in the Supplemental Lists to be provided by SW&S pursuant to the Recitals above, unless the Price Entities, or any of them, have purchased the wines or liquors from SW&S or from another wholesaler who purchased the wines or liquors from SW&S in accordance with the provisions of NRS 369.486.~~ Notwithstanding anything to the contrary, as of the Effective Date, neither NRS Chapter 369, Chapter 597 or any other applicable Nevada statutes or regulations restricts out of state retailers from selling and shipping wines, including those listed in Exhibit "A", to consumers in the State of Nevada.

3.5     After the initial five (5) years, if~~If~~, in contravention of Section 3.4~~this Agreement~~, the Prices, or any business entity they own or control, knowingly import ~~engage~~ into business in the State of Nevada or ~~as a wholesaler,~~ knowingly distribute, sell and/or offer for sale within the State of Nevada, and/or cause to be "cleared" into the State of Nevada, whether as a Nevada importer, wholesaler or retailer, as those terms are defined in NRS Chapter 369 and Chapter 597, or through any online business,~~or supplier of~~ any ~~brand of~~ wine identified in the list~~an LT08~~ attached ~~as~~ Exhibit "A" or listed on the Supplemental Lists to be provided by SW&S pursuant to the Recitals above, in contravention of NRS Chapter 369, Chapter 597, or any other applicable statutes or regulations~~or if the Price Entities or any of them, or any business entity they own or control, distributes, sells, offers for sale within the state of Nevada and/or "clears" or causes to be "cleared" into the State of Nevada through a licensed Nevada importer/wholesaler any wine listed on Exhibit "A", or listed on the Supplemental Lists to be provided by SW&S pursuant to~~

Comment [MP8]: I believe this is the intent implied but thought it better to call it out.

Comment [MP9]: In the interest of avoiding future disagreements, it would be nice to have a mutual acknowledgement here. Every wine retailer around the world sells and ships to consumers in Nevada legitimately.

Comment [MP10]: I believe this was always the intent here, correct? Otherwise there is a conflict between this and Section 3.3 for the first five years.

~~the Recitals above, without having purchased said wines or liquors from SW&S or from another~~ ~~wholesaler who purchased the wines or liquors from SW&S in accordance with the provisions of~~ ~~NRS 369.486,~~ the Prices, or any business entity they own or control, shall be liable to SW&S as liquidated damages, and not as a penalty, in an amount not less than $500 for each case of wine.

**3.6    Dismissal.**  SW&S shall undertake all necessary action to obtain a Dismissal with Prejudice of all claims against the Price Entities with each side responsible for its own attorneys' fees and costs, as set forth in the Action within fourteen (14) days of the execution of this Agreement ("The Dismissal").

**4.    Release of Claims.**

**4.1**    In recognition of the consideration to be paid as described above, SW&S and the Price Entities, on their own respective behalves and on behalf of their respective brokers, partners, servants, managers, representatives, agents, officers, directors, shareholders, employees, administrators, predecessors, successors, heirs, executors, affiliates, partnerships, patent corporations, subsidiary corporations and entities, assigns, administrators, attorneys, and agents (collectively, "Agents"), hereby release and forever discharge one another and their respective Agents, and each of them, in their capacity as such and individually, irrevocably and unconditionally release, acquit and forever discharge the other Party, together with all of their Agents of and from any and all claims, promises, agreements, controversies, liabilities, obligations, actions, causes of action, charges, suits, rights, demands, costs, losses, debts, and expenses (including without limitation attorneys' fees and costs), complaints, and damages, of any nature whatsoever, known or unknown, suspected or unsuspected, whether based on contract, statute or common law, that were alleged, or could have been alleged, in the Action and/or which arise out of or are related to any fact or circumstance alleged, or that could have been alleged by or against each Party in the Action, including without limitation all causes of action sounding in tort, contract, and/or equity (hereinafter the provisions of this paragraph shall be referred to as "Released Matter").  In agreeing to the Released Matter, the Parties agree and stipulate that this settlement is made in good faith.  Nothing in this Agreement shall prevent the Parties from enforcing this Agreement or asserting claims, causes of actions, charges or complaints against the other for any breach(es) of any term of this Agreement.

**4.2**    The Parties further acknowledge and agree that these waivers of rights have been separately bargained for and are essential and material terms of this Agreement.

**5.    Miscellaneous Provisions.**

**5.1    No Admission of Liability.**  This Agreement is a compromise of disputed claims and nothing herein (other than the Recitals above) shall be deemed or construed to be an admission or concession of any legal or factual issue, liability or fault with respect to any allegation made in, or related to, any pleading in the Action.  Each Party shall bear its own attorneys' fees and costs in connection with the Action.

**5.2    Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties hereto.  The Parties acknowledge that this Agreement supersedes all previous and/or contemporaneous negotiations, discussions, understandings, or releases or other Agreements

between the Parties, written or oral, between the Parties pertaining to the subject matter hereof, and no evidence of any prior, contemporaneous, or other release or agreement shall be permitted to contradict or vary the terms hereof.

**5.3   Modifications.**   This Agreement may not be altered, amended or modified, or otherwise changed in any respect whatsoever, except in a subsequent writing signed by each of SW&S, Danielle Price, and Michael Price.

**5.4   No Assignment.**   This Agreement shall be binding on, and inure to the benefit of the successors and assigns of the Parties hereto.  Nothing in this Agreement, express or implied, is intended to confer upon any person or entity other than the Parties hereto or their respective successors, heirs, issues and assigns, any rights or benefits under or by reason of this Agreement.  This Agreement shall not be assignable by any Party hereto without the prior written consent of the other Party.  The Parties hereby represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person, corporation or other entity any Released Matter pursuant to this Agreement.

**5.5   Entire Consideration.**   The Parties agree that the settlement amount as detailed in Section 3.1 above shall constitute the entire amount of monetary consideration provided under this Agreement and the Parties shall bear their own expenses, including without limitation court costs, legal and expert fees in connection with the Action unless otherwise set forth herein and those fees incurred by them in the negotiation, preparation, and execution of this Agreement.

**5.6   Enforcement.**   If any Party to this Agreement shall institute legal proceedings or assert claims seeking to enforce the terms of this Agreement, the losing or defaulting Party shall pay to the prevailing Party or Parties, the prevailing Party's reasonable attorneys' fees, costs and expenses incurred in connection with the prosecution or defense of such proceeding or claim.

**5.7   Tax Consequences.**   The Parties acknowledge that the settlement amount detailed in Section 3.1 may or may not be considered taxable income and may be subject to disclosure to the appropriate taxing authorities.  SW&S agrees to pay any federal or state taxes, if any, which are required by law to be paid with respect to the receipt of the abovementioned settlement amount.

**5.8   Governing Law, Jurisdiction and Venue.**   This Agreement constitutes and shall be deemed to be a contract made under the laws of the State of Nevada, for any and all purposes and shall be interpreted, construed and enforced in accordance with the substantive laws of the State of Nevada, without regard to conflict or choice of laws.  Any dispute relating to or in connection with this Agreement shall be brought exclusively in the United States District Court, District of Nevada – Las Vegas.

**5.9   Construction of Ambiguities.**   The Parties expressly state that each of them have consulted with their respective attorneys concerning the terms and conditions of this Settlement Agreement, and that they have been fully advised by such attorneys with respect to their rights and obligations hereunder.

**Error! Unknown document property name.**5877752–1

**5.10   Enforceability.**  If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable, but the extent of such invalidity or unenforceability does not destroy the basis of the bargain between the Parties as contained herein, the remainder of this Agreement and the application of such provision or provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

**5.11   Representations.**  The Parties represent and warrant that they have full power, authority and legal right to execute and deliver, and to perform and observe the provisions of this Agreement.  The execution, delivery, and performance by the Parties of this Agreement have been duly authorized by all necessary legal action and the Parties have obtained any necessary consent, approval of, notice to, or any action by any person, firm corporation, or governmental agency or entity necessary or appropriate to consummate the transaction contemplated hereby.

**5.12   Headings.**  The headings of each paragraph shall not be given any meaning, are not intended to be used to interpret this Agreement, are not to be used to explain, expand, contract or limit the language of this Agreement in any way, and are only included for the purpose of easy reference.

*‡‡‡*

Formatted: Indent: First line:  0.5", Space After:  12 pt, Line spacing:  single

**5.13   Counterparts.**  This Agreement may be executed in counterparts if necessary or applicable, each of which shall be deemed an original and shall be deemed duly executed upon the signing of the counterparts by the Parties hereto.  The Parties agree that signatures by facsimile shall have the same force and effect as original signature.

IN WITNESS HEREOF, the undersigned has entered this Agreement as of the Effective Date.

DANIELLE PRICE                          BARRIQUE INTERNATIONAL LLC


Signature: _____            Signature: _____

Print Name: _____             Print Name: _____

SUBSCRIBED and SWORN to before me       Title: _____
this ___ day of _____, 2015.
                                        SUBSCRIBED and SWORN to before me
                                        this ___ day of _____, 2015.


_____                 _____
NOTARY PUBLIC                           NOTARY PUBLIC

MICHAEL PRICE

Signature: _____

Print Name: _____

SUBSCRIBED and SWORN to before me
this ___ day of _____, 2015.

_____
NOTARY PUBLIC

SOUTHERN WINE & SPIRITS OF
AMERICA, INC., d/b/a SOUTHERN WINE
& SPIRITS OF NEVADA

Signature: _____

Print Name: _____

Title: _____

SUBSCRIBED and SWORN to before me
this ___ day of _____, 2015.

_____
NOTARY PUBLIC

Formatted: Space After:  0 pt, Adjust space between Latin and Asian text, Adjust space between Asian text and numbers

Formatted: Indent: First line:  0"

Error! Unknown document property name.5877752_1